UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON EDWARDS,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:11-cv-01663 - LJO - JLT<br><br>FINDINGS AND RECOMMENDATIONS DIRECTING REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g), AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF JASON EDWARDS AND AGAINST DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY |

      Jason Edwards ("Plaintiff") asserts he is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the medical evidence and in assessing his credibility. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, it is recommended the action be **REMANDED for further proceedings**.

## PROCEDURAL HISTORY

      Plaintiff filed an application for supplemental security income on October 31, 2007, alleging disability beginning July 1, 2001. (Doc. 11-3 at 26). The Social Security Administration denied his claim initially and upon reconsideration. *Id.* After requesting a hearing, Plaintiff testified before an ALJ at hearings held on April 7, 2010 and July 23, 2010. *Id.* at 44, 67. The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on July 30, 2010.

*Id.* at 23-33. Plaintiff requested a review by the Appeals Council of Social Security, which found no reason to change the ALJ's decision on June 24, 2011. *Id.* at 2-5. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of

disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

**A.     Relevant Medical Opinions**

On December 22, 2003, Dr. David Kheradyar performed an internal medicine evaluation on Plaintiff. (Doc. 11-9 at 93). At the time of the examination, Plaintiff weighed 218 pounds. *Id.* at 95. Dr. Kheradyar observed Plaintiff's range of motion was normal, and he did not have "tenderness, warmth or erythema over any joints." *Id.* at 96. In addition, Dr. Kheradyar determined Plaintiff's strength was "5/5 in all extremities." *Id.* Based upon these results, Dr. Kheradyar opined Plaintiff had the ability to "lift and carry occasionally 50 pounds, frequently 25 pounds." *Id.* at 97. In addition, Plaintiff could "stand and walk for two to four hours with breaks" and "sit without restriction." *Id.* However, because of Plaintiff's chronic pulmonary disease and cardiomyopathy, Dr. Kheradyar opined Plaintiff should "avoid noxious fumes, mold and dust, and have limited involvement activities "requiring excessive physical exertion." *Id.*

Dr. Carmen Lopez completed a residual functional capacity assessment on March 5, 2004. (Doc. 11-9 at 98-107). Dr. Lopez noted Plaintiff had "mild difficulty" with activities of daily living, and was able to walk one to two blocks between November 2002 and 2003. *Id.* at 98. Dr. Lopez opined Plaintiff had the ability to lift and carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk "2 to 4 [hours] w/ normal breaks," and sit about six hours in an eight-hour day. *Id.* at 101. Therefore, Dr. Lopez recommended a sedentary work level for Plaintiff. *Id.* at 99. Due to

Plaintiff's shortness of breath and COPD, Dr. Lopez opined Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* at 103.

Dr. Rustom Damania completed an internal medicine consultative examination on February 26, 2008. (Doc. 11-8 at 26-30). Plaintiff reported he was unable to walk more than half a block, and that he sometimes suffered from "coughing, wheezing and shortness of breath" even when resting. *Id.* at 26. Plaintiff had normal ranges of motion, and his motor strength was "5/5 in both upper and lower extremities." *Id.* at 29. Dr. Damania diagnosed Plaintiff with morbid obesity, congestive heart failure, hypertension, and former drug dependency. *Id.* Dr. Damania opined Plaintiff "should be able to lift and carry 10 pound occasionally and 10 pounds frequently." *Id.* According to Dr. Damania, Plaintiff "should be able to stand and walk for six hours out of a normal workday with normal breaks" and "should be able to sit six hours." *Id.* Dr. Damania concluded Plaintiff did not have definite postural or manipulative limitations. *Id.*

On March 18, 2008, Dr. James Glaser completed a physical residual functional capacity assessment. (Doc. 11-8 at 31-35). Dr. Glaser reviewed the medical records and recommended a "light" residual functional capacity. *Id.* at 38. Specifically, Dr. Glaser determined Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally. *Id.* at 32. In addition, he concluded Plaintiff had the ability to stand or walk with normal breaks for about six hours in an eight-hour day, or sit for six hours in an eight-hour day. *Id.* Dr. Glaser opined Plaintiff was limited to occasionally climbing ramps and stairs, but could never climb ladders, ropes, or scaffolds. *Id.* at 33.

Dr. Rashidian, Plaintiff's treating physician,[1] completed a questionnaire regarding Plaintiff's impairments on April 21, 2010. (Doc. 11-10 at 58). Dr. Rashidian opined Plaintiff was precluded from performing any full-time work, at any exertion level, due to his dilated cardiomyopathy, COPD, depression, morbid obesity, and chronic lower back pain. *Id.* According to Dr. Rashidian, Plaintiff was able to sit for 2-3 hours and stand 1-2 hours in an eight-hour day. *Id.* Dr. Rashidian opined

---

[1] Defendant contends Dr. Rashidian "was likely not a 'treating physician' as that term is defined in the regulations." (Doc. 15 at 7). However, Dr. Rashidian appears to be familiar with Plaintiff's treatment plan, as he noted the medication Plaintiff was taking and his reaction to treatment. (Doc. 11-10 at 59, 62). In addition, the ALJ referred to Dr. Rashidian as Plaintiff's treating physician. (Doc. 11-3 at 29, 32). According, the Court recognizes Dr. Rashidian as Plaintiff's treating physician.

Plaintiff had mild limitations with his ability to understand, remember, and carry out complex job instructions, and moderate limitations with his ability to maintain concentration and attention. *Id.* at 60. In addition, Dr. Rashidian opined Plaintiff had "moderate" difficulties with his ability to withstand stress and pressures associated with work activity. Dr. Rashidian explained Plaintiff's response to treatment for depression was poor, and his prognosis was "guarded." *Id.* at 59.

**B.      Hearing Testimony**

1.      April 7, 2010

Plaintiff appeared to testify before the ALJ at a hearing held on April 7, 2010. (Doc. 11-3 at 67). Plaintiff reported he "had one a job in 2005, doing demolition and roofing," but the job only lasted one day. *Id.* at 73. In addition, he worked as a short-order cook, preparing breakfast and lunch for customers. *Id*. Plaintiff was required to lift "[a] 100-pound sack of potatoes, cases of carrots, [and] miscellaneous food . . . that would come in from a shipment." *Id.* at 74. Based upon this testimony, the vocational expert, characterized Plaintiff's work as a short-order cook as "heavy." *Id.* at 74-75. Because the ALJ had not been given medical source statements, the remainder of the hearing was postponed until July 23, 2010. *Id.* at 44, 69.

2.      July 23, 2010

      a.      *Plaintiff's testimony*

Plaintiff testified that he was 5'6" and weighed 324 pounds. (Doc. 11-3 at 48). He stated that he went to school for ten years, but did not get a GED. *Id.* at 51. Plaintiff did not go to a trade or vocational school. *Id.* He reported that he lived in a house with his mother, who drove him to doctor appointments or other places he needed because he did not have a driver's license. *Id.* at 49-50.

Plaintiff reported he had "[c]ongestive heart failure with failure of the ventricle" and COPD. (Doc. 11-3 at 52). Plaintiff stated he received treatment every three months at "Fresno Community," where they checked his medication and breathing, and listened to his heart. *Id.* at 52. He testified he had some negative side effects from his medication, including dizziness and frequent urination. *Id.* at 54. He reported that he smoked "[a]bout a half-a-pack a day," but about six months before the hearing he smoked "two packs a day." *Id.* at 55. In addition to his physical impairments, Plaintiff testified he was "sad," and took Zoloft for his mental health. *Id.* at 57-58.

5

According to Plaintiff, he was able to take care of his personal grooming needs, do light cooking and laundry, dust, and do dishes. (Doc. 11-3 at 50). Plaintiff reported that he watched television and read about three hours each day. *Id.* Plaintiff described his typical day as follows:

> I get up about 8:00. I have coffee, watch a little big the news. I'll make dish water and let the dishes soak. I rest a little while and watch a bit of TV. I'll get up and finish doing the dishes and sit down for a little bit and take my medicine. Start some laundry if I have some. I make my bed. Take the trash out if it needs to. The trash can's kind of a long way, so I stop on the way. I take a nap about noon. . . .
>
> I'll get up and make something to eat, a sandwich or whatever, put my laundry in the dryer and I like Leave it to Beaver. [sic] I'll watch that. Finish doing my laundry and just relax and tidy up the house if I can, if there's anything to do. I might check the mail, go through the bills, and try to do something productive. That's about it.

(Doc. 11-3 at 55-56). He reported his naps lasted about an hour, and that he elevated his feet to reduce swelling "[t]hree or four times a day," an hour each time. *Id.* He stated his hobbies included listening to music and watering the lawn. *Id.* at 51. Plaintiff stated he used to enjoy riding a bicycle, but was no longer able to "do any outside activities because of the heat and it just drains [him]." *Id.* at 54.

He estimated that he could sit for "[a]bout 15/20 minutes" and stand "[a]bout ten minutes. *Id.* at 52. In addition, Plaintiff believed he could "walk about a quarter-of-a-block." *Id.* He reported the most he could lift was "[a]bout ten pounds." *Id.* at 54. In addition, Plaintiff stated he had difficulty bending and he could not use the stairs. *Id.* at 58. According to Plaintiff, physical exertion caused him to cough and sweat, and he had "heart palpitations and shortness of breath." *Id.*

### b. *Testimony of third party witness*

Donna Marie Holman, Plaintiff's mother, testified after Plaintiff at the hearing. (Doc. 11-3 at 59). Ms. Holman reported that she had observed Plaintiff's depression increase, even over the last few months, and he was "really sad and brokenhearted." *Id.* at 60. She explained: "He's always in deep thought. He cries easily. He talks to me sometimes about how sorry he is that he got sick and that I have to take care of him, that he can't work . . . He's a broken man." *Id.*

### c. *Vocational Expert' Testimony*

Vocational expert ("VE") Judith Najarian testified at the hearing as well. (Doc. 11-3 at 61). She reiterated Plaintiff's past relevant work as a short-order cook "was performed as heavy." *Id.*

However, the VE explained that in the *Dictionary of Occupational Titles* ("*DOT*"),[2] the position was defined as light work, SVP 3.  *Id.*

The ALJ asked the VE to consider a hypothetical individual of the same age, education, and work history as Plaintiff.  (Doc. 11-3 at 62).  The individual "could lift ten pounds occasionally and frequently; sit, stand and/or walk six out of eight hours; [and] occasionally climb, stoop, crouch, or crawl."  *Id.*  The VE opined such a person was unable to perform Plaintiff's past relevant work as actually performed or as defined by the *DOT*.  *Id.*  However, the VE concluded the individual would be able to perform "unskilled, sedentary" work in the national economy.  *Id.*  For example, the VE identified the following positions:  order clerk, food and beverage, *DOT* 209.567-014; assembler, *DOT* 713.687-026; and hand packer, *DOT* 920.687-030.  *Id.*

Next, the ALJ asked the VE to consider an individual with the same physical assertions as the first hypothetical, but who also "could have no concentrated exposure to dust, fumes, gases, odors or poor ventilation."  (Doc. 11-3 at 63).  Again, the VE explained the worker could not perform Plaintiff's past relevant work.  *Id.*  However, the individual would be able to perform the jobs identified previously because the sedentary positions did not have exposure to dust, fumes, gases or odors.  *Id.* at 63-64.

Last, the ALJ asked whether  a person who "miss[ed] three to four days per month due to illness or the need for treatment" would be able to perform work in the national economy.  (Doc. 11-3 at 65). The VE opined in that instance, there was no work available.  *Id.*  Likewise, no work was available to an individual "required to lay down or elevate their legs on to two hours out of an eight-hour workday . . . and need[ed] proximity to a restroom for unscheduled breaks."  *Id.*

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the application date of October 31, 2007.  (Doc. 11-3 at 28).  Next, the ALJ

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy.  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

found Plaintiff's dilated cardiomyopathy, chronic obstructive pulmonary disease ("COPD") and obesity were severe impairments. *Id.* These impairments did not meet or medically equal a listing. *Id.* at 30.

After considering "the entire record," the ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and carry 10 pounds frequently, and sit, stand, and/or walk 6 hours each in an 8-hour day and can occasionally climb, stoop, crouch, kneel, or craw." (Doc. 11-3 at 30). In addition, Plaintiff was required to "avoid concentrated exposure to dust, fumes, gases, odors, and poor ventilation." *Id.* With this RFC, Plaintiff was unable to perform past relevant work. *Id.* at 32. However, the ALJ determined that there were jobs in significant numbers in the national economy that Plaintiff could perform. *Id.* Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 33.

## DISCUSSION AND ANALYSIS

**A.    The ALJ erred in his evaluation of the medical evidence.**

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians, (2) examining physicians, who examine but do not treat the claimant, and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d. 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

A physician's opinion is not binding upon the ALJ when the ALJ provides "specific and legitimate" reasons for rejecting the opinion, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may

not substitute its judgment for that of the ALJ"). Notably, the opinion of a treating physician may be rejected whether the opinion is contradicted by another. *Magallanes*, 881 F.2d at 751. Plaintiff contends the ALJ failed to give sufficient reasons to reject the opinion of his treating physician, Dr. Rashidian. (Doc. 14 at 5). On the other hand, Defendant contends "[t]he ALJ properly considered the medical opinions, including those of Dr. Rashidian." (Doc. 15 at 7).

In evaluating the opinion offered by Dr. Rashidian, the ALJ determined the opinion was entitled to "little weight." (Doc. 11-3 at 32). According to the ALJ, "The opinion of the treating physician that the claimant is unable to perform sedentary work because he can sit for 2-3 hours in an 8 hour day and must lie down to elevate his legs for 1-2 hours in an 8 hour day . . . is inconsistent with treating record (sic) [Citations] and with the opinion of Dr. Damania [Citation]." (Doc. 11-3 at 32). Thus, the ALJ determined the opinion of Dr. Rashidian was not entitled to controlling weight.

Significantly, when a treating physician's opinion is unsupported by the objective medical evidence, the ALJ must identify the conflicting evidence to set forth a specific, legitimate reason for discounting the opinion. *See Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). To disregard a treating physician's opinion as contradicted by the medical evidence, or reject the opinion in favor of the opinion of an examining physician, the ALJ has a burden to "*set out a detailed and thorough summary of the facts and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton*, 799 F.2d at 1408 (emphasis added); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the ALJ offered only his conclusions that the treating record contradicted the opinion of Dr. Rashidian, and cites broadly to nearly one hundred pages of treatment records, without referencing any findings or clinical evidence therein. In addition, the ALJ failed to set forth the specific conflicts between the opinions of Drs. Rashidian and Damania, but rather only stated Dr. Rashidian's opinion "was inconsistent . . . with the opinion of Dr. Damania."  (Doc. 11-3 at 32).

Accordingly, the ALJ has not carried his burden to set forth "a detailed and thorough summary of the facts and conflicting clinical evidence." *See Cotton*, 799 F.2d at 1408. Although the ALJ may have identified "specific, legitimate reasons" to dismiss Dr. Rashidian's conclusions, he did not address them in his decision. *See Thomas*, 278 F.3d at 957.

///

**B.      Remand is appropriate in this matter.**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to properly reject the opinion of Plaintiff's treating physician. This opinion is intertwined with the testimony of the vocational expert regarding Plaintiff's ability to perform work in the national economy and the RFC determination based thereon by the ALJ. Consequently, the matter should be remanded for the ALJ to re-evaluate the medical opinions, because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the opinion of the treating physician was credited.

## FINDINGS AND RECOMMENDATIONS

For all these reasons, the ALJ erred in the evaluation of the medical evidence and in giving less weight to the opinion of Plaintiff's treating physician. The ALJ failed to set forth legally sufficient reasons supported by substantial evidence in the record for giving less weight to the opinion of Dr. Rashidian. As a result, the ALJ failed to apply the correct legal standards, and the decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate on this matter, it offers no findings on the remaining issues.

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. The matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2. The Clerk of Court be **DIRECTED** to enter judgment in favor of Plaintiff Jason Edwards and against Defendant, Michael J. Astrue, Commissioner of Social Security.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file and serve written objections with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the Objections shall be filed and served within fourteen days of the date of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 8, 2012**              **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE